# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY ONE PROVIDER PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 2252(a)(2) | ) Case No.  25-SC-917 ) ) ) ) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference)

Located within the jurisdiction of the District of Columbia, there is now concealed  *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(2) (Distribution/Receipt of Child Pornography). | |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Tonya Sturgill Griffith, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone
_____  *(specify reliable electronic means).*

Date:    6/4/2025
_____

_____
*Judge's signature*

City and state:    Washington, D.C.
_____

Zia M. Faruqui
_____
(United States Magistrate Judge)

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH ONE ACCOUNT<br>STORED AT PREMISES CONTROLLED BY ONE<br>PROVIDER PURSUANT TO 18 U.S.C. 2703 FOR<br>INVESTIGATION OF VIOLATION OF 18 U.S.C. 2252(a)(2) | )<br>)<br>)<br>)<br>)<br>) | Case No.  25-SC-917 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located within the jurisdiction of the District of Columbia.
*(identify the person or describe the property to be searched and give its location)*:

See Attachment  A (incorporated by reference).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment  B (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before _____ June 18 2025 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Zia M. Faruqui _____ .
                                                                                          *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ❒ for _____ days *(not to exceed 30)*   ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued:  _____ 6/4/2025 _____          _____
                                                                                      *Judge's signature*

City and state:  _____ Washington, D.C. _____          Zia M. Faruqui
                                                                                  United States Magistrate Judge

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br><br>25-SC-917 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Kik account identified by display name Dr.BrockJr. (SUBJECT KIK ACCOUNT), which is stored at the premises controlled by Kik c/o MediaLab.Ai Inc. (the "Provider"), a company that is headquartered at and accepts service of legal process at 1237 7th St., Santa Monica, California, 90401.

## ATTACHMENT B

**Particular Things to be Seized and Procedures to Facilitate Execution of the Warrant**

**I.      Information to be disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

1.      Basic subscriber data, unrestricted by date, associated to the Kik account Dr.BrockJr.  (including but not limited to name, phone numbers, display names, usernames, email addresses, mailing addresses, and billing addresses);

2.      All device related information, including device history and any device identifiers associated with the Kik account Dr.BrockJr.

3.      IP addresses associated to the Kik account Dr.BrockJr.  from account creation, to the present;

4.      All transactional chat logs associated to the Kik account Dr.BrockJr.  from account creation, to the present;

5.      All images and video associated to the Kik account Dr.BrockJr.  including the usernames and IP addresses associated to the sender of the images and video from account creation, to the present;

6.      A date-stamped log showing the usernames that Kik account Dr.BrockJr.  added and/or blocked from account creation, to the present;

7.      All abuse reports associated with the Kik account Dr.BrockJr. including the unknown usernames from account creation, to the present;

8.      All emails and phone numbers associated with the Kik account JMASPEN18 from account creation, to the present;

9.      Registration IP address associated with the Kik account Dr.BrockJr.;

10.      User Dr.BrockJr.'s group create log including the creator's username and IP address;

11.      User Dr.BrockJr.**'s** group join logs from account creation, to the present including the inviter and invitee username(s) and IP addresses;

12.      User Dr.BrockJr.'s group leave logs from account creation, to the present including the remover and removed username(s) and IP addresses;

13.      User Dr.BrockJr.'s group transactional chat logs from account creation, to the present including the senders' IP addresses; and

14.      User Dr.BrockJr.'s images and videos sent to groups including the sender's and receiver's usernames, and IP addresses associated to the sender of the images and videos from account creation, to the present;

Within 14 days of the issuance of this warrant, notwithstanding 18 U.S.C. § 2252a/2252A or any similar statute or code, Kik c/o Medialab, Inc. shall disclose responsive data by sending the content of the Subject Account to the following address:

> **Federal Bureau of Investigation**
> **Cheverly Industrial Park – Washington Field Office**
> **NVRA/CR-21**
> **Special Agent Tonya Sturgill Griffith**
> **2400 Schuster Drive**
> **Cheverly, MD 20781**
>
> Or by email transmission to

**tsgriffith@fbi.gov**

PROVIDER is specifically authorized to transmit or send the information specified below to the Metropolitan Police Department anywhere in the United States, including, but not limited to, Washington, D.C.

## II.    Government procedures for warrant execution

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMIBA

<table>
<tr>
<td>

**IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY ONE PROVIDER PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 2252(a)(2)**

</td>
<td>

**Case No. 25-SC-917**

**Filed Under Seal**

</td>
</tr>
</table>

*Reference:*      *USAO Ref. # 2025R0599; Subject Account(s): Display name* **Dr.Brock Jr.**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Tonya Sturgill Griffith, being first duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with one Kik account that is stored at premises owned, maintained, controlled, or operated by MediaLab.Ai, Inc. (Media Lab) (herein "PROVIDER"), a an electronic communications services provider and/or remote computing services provider which is headquartered at and accepts service at 1237 7th Street, Santa Monica, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(a), (b)(1)(A) and (c)(1)(A) to require PROVIDER to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.      I have been employed as a Special Agent with the FBI since February 2002. Since July 2010, I have been assigned to the Washington Field Office Child Exploitation and Human Trafficking Task Force and investigate violations involving child pornography, the sexual exploitation of children and related offenses. I have gained experience through training and work related to conducting these types of investigations. In addition, I am certified as a Digital Evidence Extraction Technician (DExT) within the FBI.  As a DExT, I am trained and authorized to conduct forensic examinations of digital evidence. This work includes the preservation and analysis of various forms of digital media, including cellular devices, smartphones, and computers.

3.      The statements in this Affidavit are based in part on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents, law enforcement officers, and witnesses, and information provided by records and databases. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe violations of 18 U.S.C. § 2252(a)(2), that is, the distribution of child pornography, have been committed by an individual using Kik account with the username Dr.BrockJr. There is probable cause to search the information described in Attachment A for evidence of these crimes, and contraband or fruits of these crimes, as described in Attachment B. I submit this application and affidavit in support of a search warrant authorizing a search of the Kik account Dr.BrockJr. (the SUBJECT KIK ACCOUNT), as further described in Attachments A and B, incorporated herein by reference.

## JURISDICTION

4.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. § 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court of the District of Columbia is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  As detailed fully below, some of the acts under investigation occurred in the District of Columbia. D.C. *See* 18 U.S.C. § 3237.

## BACKGROUND ON KIK[1]

5.      In October 2019, Kik was purchased by Media Lab, a company operating in California in the United States. Kik advertises itself as "the first smartphone messenger with a built-in browser." Kik Messenger allows its users to "talk to your friends and browse and share any web site with your friends on Kik." According to the website, Kik Messenger, a free service easily downloaded from the Internet, has become the simplest, fastest, most life-like chat experience you can get on a smartphone. Unlike other messengers, Kik usernames - not phone numbers - are the basis for Kik user accounts, so Kik users are in complete control with whom they communicate. In addition, Kik features include more than instant messaging. Kik users can exchange images, videos, sketches, stickers and even more with mobile web pages.

6.      The Kik application ("app") is available for download via the App Store for most iOS devices such as iPhones and iPads. Additionally, the Kik app is available on the Google

---

[1] MediaLab.Ai, Inc. produces a Kik Law Enforcement Guide that is publicly available online and describes material they maintain and can provide through the execution of lawful service. *See* https://lawenforcement.kik.com/hc/en-us/article_attachments/360050822711/Kik_Law_Enforcement_Guide.pdf.    This    guide    and knowledge of other law enforcement operations has provided your affiant with the information being requested of MediaLab.Ai, Inc.'s Kik application in this application and Attachment B to the search warrant.

PlayStore for Android devices. Kik can be used on multiple mobile devices, to include cellular phones and tablets.

7.      In general, providers like Kik ask each of their subscribers to provide certain personal identifying information when registering for an account. This information can include the subscriber's full name, physical address, and other identifiers such as an e-mail address.

8.      An Electronic Service Provider ("ESP"), like Kik, typically retains certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, ESPs often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

9.      In some cases, account users will communicate directly with a provider about issues relating to their account, such as technical problems or complaints from other users. Providers typically retain records about such communications, including records of e-mails and other contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

10.      Information stored at Media Lab, parent company of Kik, including that described above, may provide crucial evidence of the details and methodology of the criminal conduct under investigation. In my training and experience, the data pertaining to an account that is retained by

a provider like Kik can also indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, data collected at the time of account sign-up and other communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a Kik account at a relevant time. Further, such stored electronic data can show how and when the account was accessed or used. Such "timeline" information allows investigators to understand the chronological context of the usage of a Kik account, account access, and events relating to the crime under investigation. Additionally, stored electronic data may provide relevant insight into the state of mind of the user of a Kik account as it relates to the offense under investigation. For example, information relating to a particular Kik account may indicate the user's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

11.    Kik offers users the ability to create an identity within the app referred to as a "username." This username is unique to the account and cannot be changed. No one else can utilize the same username. A Kik user would have to create a new account in order to obtain a different username. The username for a particular Kik account holder is displayed in their Kik profile.

12.    Kik maintains certain content data that is uploaded and shared by users including images and videos associated to the Kik account, a log showing the usernames that Kik account added and/or blocked, and abuse reports associated with the Kik account.

13.    Kik users are also able to create chat groups of up to 50 people to communicate in a group setting and exchange images and videos. These groups are administered by the group

creator who has the authority to remove and ban other users from the group. Once the group is created, Kik users can share a link to the group with any other Kik user.

14.    Kik also retains data regarding groups to which a user belongs. That data includes: information logs (containing the group name(s), group type, and the status of the group that a user belongs to); create logs (containing the details about who created the group and at what time); join logs (containing the timestamps and the method of users who have joined the group); leave logs (containing the timestamps and the method of users who have left the group); transactional chat log (containing a log of all the messages that a group has received, including sender username, timestamps, IP of the sender, receiver username(s), and word count, but not the actual message that was sent); chat platform log (containing a log of all the media files that a group received, including sender username, timestamps, IPs of the sender, receiver username(s), media type, and content ID); photographs and/or videos received by the group; and group abuse reports (containing a transcript of reported chat history against the subject group, including sender username, receiver username, timestamps, actual message, and content IDs).

## **PROBABLE CAUSE**

15.    Leading up to April 21, 2025, an FBI Washington Field Office (WFO) Task Force Officer (TFO) was acting in an undercover (UC) capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation and Human Trafficking Task Force ("CEHTTF"), operating out of a satellite office in Washington, D.C.  In that capacity, the UC entered a public Kik group that was known to the UC as a place where people meet to discuss and trade original images and videos of children, to include child pornography.

16.    Upon entering the group, the UC introduced himself and stated that he was a "dad." A member of the group using the Kik username "Dr.BrockJr." subsequently identified as the

subject TIMOTHY MICHAEL BROCKERMAN initiated a private chat with the UC. During the private chat, the defendant stated, "I am not a dad how old is your daughter?" The UC responded that his purported daughter was 6 years old. The defendant then stated that he had a sexual interest in incest, young, and beast.[2]

17.     During the private chat with the UC, the defendant discussed the UC's purported daughter stating, "I would eat ur lil pussy make it good and wet then slid my cock in, opening ur up slow." The defendant later told the UC that he was interested in meeting the UC at his home for purposes of engaging in sexual activity with the UC's purported daughter and described in detail various sexual acts he wished to engage in with the purported 6-year-old.

18.     The defendant provided the UC with his mobile phone number 571-316-XXXX. During the text conversation, the defendant confirmed that he planned to travel from Virginia to the District of Columbia at a specified date and time to have sexual intercourse with the UC's purported 6-year-old daughter.

19.     On April 25, 2025, a subpoena was served on T-Mobile for the phone number that the defendant used to communicate with the UC (571-316-XXXX). T-Mobile provided the name "Timothy Brockerman" as the registered user of the account. A driver's license photo of Timothy Brockerman is resembles the profile photo used by the defendant on his "Dr.BrockJr." Kik account.

20.     On April 29, 2025, the defendant arrived at the meeting location at the specified time in the District of Columbia, met with the UC and was placed under arrest. Following his arrest, the defendant waived his Miranda rights and agreed to a voluntary custodial interview. During the interview, the defendant admitted he traveled from Virginia to the District of Columbia

---

[2] Your Affiant understands that "beast" is short for "bestiality", which means having a sexual interest in animals.

with the intent of having vaginal sex with the 6-year-old purported daughter of a man he had met on Kik.  The defendant also signed a Consent to Search form for his Motorola mobile phone, which was seized from him during the arrest.

21.    During the forensic review of the defendant's phone, several images consistent with child pornography were located on the device.  Furthermore, a review of the defendant's Kik chats revealed in addition to the chats with the UC, the defendant was communicating with several users regarding his desire to sexually abuse girls as young as six.  Another KIK user sent the defendant a picture of his purported 11-year-old daughter.  The defendant responded to the picture saying he would like to "fuck her."  The defendant also distributed several CSAM videos and images to at least one other Kik user.  For example, the following files were sent by the defendant to another Kik user:

a.    A video depicting a prepubescent girl shown from the waist down while her bathing suit is pulled to one side and her vagina is penetrated by an adult man's penis;

b.    An image depicting a minor girl's face with a white substance that appears to be ejaculate on her face; and

c.    An image depicting a prepubescent girl with an adult penis inserted into her anus.

22.    Based on training and experience, your affiant understands that Kik users who receive and distribute child pornography often engage in this behavior throughout the duration of their use of the application. Additionally, those who sexually exploit children online frequently converse with other like-minded individuals who receive and distribute child pornography, and they rarely delete the conversations and images/videos they receive and/or possess. However, if they do, the content still may still exist within the application or on the device used by the

subscriber to the account. The requested order seeks records from account inception to the present. Records covering the period when the listed accounts were established and immediately thereafter will allow law enforcement to confirm or deny the identity and location of the account user(s) (i.e., evidence of user attribution), and to connect the account and its user(s) to offense conduct that is the subject of this investigation.  Records covering the time period of account inception to present will also provide information about the account user's long-term patterns of communication and relationships with other persons, including potential co-conspirators (namely, other individuals engaged in sharing, trading, and/or buying/selling child pornography). As a result, the warrant seeks records from the Kik account's inception to present.

23.    Therefore, your affiant has probable cause to believe there is evidence of distribution of child pornography throughout the SUBJECT KIK ACCOUNT.

### CHARACTERISTICS COMMON TO INDIVIDUALS WHO TRANSPORT, DISTRIBUTE, POSSESS, AND/OR ACCESS WITH INTENT TO VIEW CHILD PORNOGRAPHY

24.    Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who transport, distribute, possess, and/or access with intent to view child pornography:

a.    Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.    Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.  Individuals who have a sexual interest in

children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

  c. Such individuals almost always possess and maintain their hard copies of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

  d. Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis; however, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools.

  e. Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of

forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.[3]

       f.    Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

25.    Based on the information above, your Affiant believes that the user of the SUBJECT KIK ACCOUNT likely displays characteristics common to individuals who transport, distribute, possess, or access with intent to view child pornography.

## DEFINITIONS

26.    Based on my training and experience, and information acquired from other law enforcement officials with technical expertise, I know the terms described below have the following meanings or characteristics:

       a.    IP Address:  The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet must be assigned an IP

---

[3] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370-71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010).)

address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b. The Internet is a global network of computers and other electronic devices that communicate with each other using numerous specified protocols. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. "Encryption" is the process of encoding messages or information in such a way that eavesdroppers or hackers cannot read it but authorized parties can. In an encryption scheme, the message or information, referred to as plaintext, is encrypted using an encryption algorithm, turning it into an unreadable ciphertext. This is usually done with the use of an encryption key, which specifies how the message is to be encoded. Any adversary that can see the ciphertext should not be able to determine anything about the original message. An authorized party, however, is able to decode the ciphertext using a decryption algorithm that usually requires a secret decryption key, to which adversaries do not have access.

d. "Cache" means the text, image, and graphic files sent to and temporarily stored by a user's computer from a website accessed by the user in order to allow the user speedier access to and interaction with that website.

e. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

f. "Child Pornography" means the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. *See* 18 U.S.C. §§ 2252 and 2256(2)(8).

g. "Computer" means "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e)(1).

h. "Computer hardware" means all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors,

modems, routers, scanners and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

i.  "Computer passwords and data security devices" means information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

j.  "Computer software" means digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

k.  "Computer-related documentation" means written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

l.  "Domain Name" means the common, easy-to-remember names associated with an Internet Protocol address. For example, a domain name of "www.usdoj.gov" refers

to the Internet Protocol address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period. Each level, read backwards – from right to left – further identifies parts of an organization. Examples of first-level, or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and, .edu for educational organizations. Second-level names will further identify the organization, for example usdoj.gov further identifies the United States governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable. For example, www.usdoj.gov identifies the World Wide Web server located at the United States Department of Justice, which is part of the United States government.

m. "Internet Connection" means a connection required for access to the Internet. The connection would be provided by cable, DSL (Digital Subscriber Line) or satellite systems.

n. "Internet Service Providers" or "ISPs" mean commercial organizations which provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers, including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer various means by which to access the Internet including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports. Many ISPs assign each subscriber an

account name such as a user name or screen name, an e-mail address, and an e-mail mailbox, and the subscriber typically creates a password for the account. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password.

o.  "Minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

p.  A "modem" translates signals for physical transmission to and from the Internet Service Provider, which then sends and receives the information to and from other computers connected to the Internet.

q.  A "router" often serves as a wireless access point and directs traffic between computers connected to a network (whether by wire or wirelessly). A router connected to the Internet collects traffic bound for the Internet from its client machines and sends out requests on their behalf. The router also distributes to the relevant client inbound traffic arriving from the Internet. The router is in turn typically connected to a modem.

r.  "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. *See* 18 U.S.C. § 2256(2).

s.  "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See 18 U.S.C. § 2256(5).

t.  "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

u.  "Wireless network" as used herein means a system of wireless communications in which signals are sent and received via electromagnetic waves such as radio waves. Each person wanting to connect to a wireless network needs a computer which has a wireless network card that operates on the same frequency.  Many wired networks base the security of the network on physical access control, trusting all the users on the local network.  But, if wireless access points are connected to the network, anyone in proximity to the network can connect to it.  A wireless access point is equipment that connects to the modem and broadcasts a signal.  It is possible for an unknown user who has a computer with a wireless access card to access an unencrypted wireless network.  Once connected to that network, the user can access any resources available on that network to include other computers or shared Internet connections.

v.  "Secure Hash Algorithm Version 1 hash value" (SHA 1 hash value) is an algorithm that processes digital files, resulting in a 160-bit value that is unique to that file.  It is computationally infeasible for two files with different content to have the same SHA 1 hash value.  By comparing the hash values of files, it can be concluded that

two files that share the same hash value are identical with a precision that exceeds 99.9999 percent certainty. There is no known instance of two different child pornographic images or videos having the same SHA1 hash value.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

27. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A), by using the warrant to require Kik to disclose to the government copies of the records and other information (including the content of communications) particularly described in Attachment B.

28. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## CONCLUSION

29. Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2), that is, the distribution and/or receipt of child pornography, will be located in the SUBJECT KIK ACCOUNT, as more fully described in Attachments A and B to this Affidavit. Because the warrant will be served on Kik, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution for the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Tonya Sturgill Griffith
Special Agent
Federal Bureau of Investigations

Sworn and Attested to me by Applicant by Telephone per Fed. R. Crim. P. 4.1 and 41(d)(3) on June 4, 2025.

_____
HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE